UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VIASTAR ENERGY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:05-cv-1095-DFH-WTL |
| ) | |
| MOTOROLA, INC., ) | |
| ) | |
| Defendant. ) | |

ENTRY ON DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE ISSUE OF DAMAGES

Plaintiff ViaStar Energy, LLC entered into a Development and Product Supply Agreement (the "Agreement") in 2003 with defendant Motorola, Inc. for the development, manufacture, and marketing of an automated meter reading ("AMR") product that would enable utilities to read usage meters from a fixed base. ViaStar alleges that Motorola breached the Agreement in several respects and seeks damages that include, among other things, the lost profits it allegedly suffered as a result of Motorola's breach. Motorola argues in its partial summary judgment motion that ViaStar could not recover lost profits because the Agreement specifically precludes "consequential" damages. Each party has offered quotations from courts saying that lost profits either are or are not "consequential" damages. The question is governed not by a black-letter law standard but by the objective expressions of the parties' intentions in their contract. The Agreement

includes language that shows the parties intended that lost profits on sales of the AMR product (whether by Motorola to ViaStar or by ViaStar to its customers) could be recovered to the extent they are based on sales projections the parties had agreed upon. Accordingly, Motorola's motion is denied.[1]

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty*

---

[1] Motorola's six page motion for partial summary judgment prompted a four page response from ViaStar. After seeing ViaStar's response, Motorola filed a twelve page reply brief that was significantly better researched and more refined than its original motion. This "reply" understandably prompted an eleven page surreply from ViaStar. Motorola then filed a ten page response to ViaStar's surreply. The court appreciates concise briefs. However, this practice of filing a short stalking horse of a motion and waiting to see the opponent's response before revealing the principal arguments and authorities is simply not a fair tactic. It tends to multiply the briefing and expense, as it has in this case. Although it would be reasonable simply to deny the motion outright on this basis, the court has elected to resolve the issue on the merits, in the interest of contributing toward the ultimate resolution of the case. The court does not expect to see the tactic repeated.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Conley v. Village of Bedford Park*, 215 F.3d 703, 708 (7th Cir. 2000). Nevertheless, where the issue is interpretation of a written contract, summary judgment is often appropriate. *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771 (7th Cir. 2000), citing *Independent Const. Equipment Builders Union v. Hyster-Yale Materials Handling, Inc.*, 83 F.3d 930, 933 (7th Cir. 1996) ("Summary judgment is particularly appropriate in cases involving the interpretation of written contracts.").

*Facts For Summary Judgment*

The factual statements in this decision are not necessarily accurate but reflect the evidence in light of the summary judgment standard. Motorola and ViaStar entered into the Agreement on June 27, 2003 under which Motorola agreed to design, develop, manufacture, warrant, and sell a fixed network AMR product to ViaStar so that ViaStar could then market the product to the utilities market. ViaStar agreed to pay a lump sum engineering payment and to purchase a minimum of 50,000 AMR transmitters and related supporting components.

Under the agreement, Motorola agreed not to compete with ViaStar in the residential water market in North America. Motorola also agreed not to develop a substantially similar product, as defined in the Agreement, to compete worldwide with the AMR product developed for ViaStar.

ViaStar alleges that Motorola failed to deliver several critical items called for in the Agreement and withheld delivery of those items until ViaStar agreed to material changes in the Agreement. Those material changes included modifying the non-compete portion of the Agreement, the ownership of the AMR product, the length of the Agreement, and the Agreement's definitions of "Substantially Similar Product" and "Product." ViaStar did not agree to these changes and sought to hold Motorola to the original terms of the Agreement. ViaStar further alleges that while Motorola was seeking its acquiescence to the proposed Agreement changes, Motorola was also in the process of designing and developing an AMR product to compete with the AMR product it developed for ViaStar.

For the purpose of deciding Motorola's motion, the court assumes that ViaStar's allegations are true and that Motorola breached the Agreement. The issue before the court is whether ViaStar may recover its lost profits as a result of Motorola's alleged breach.

Section 17.1 of the Agreement provides:

> EXCEPT FOR THE PARTIES' OBLIGATIONS IN SECTION 17.2, AND UNLESS SPECIFICALLY SET FORTH HEREIN, IN NO EVENT SHALL EITHER VIASTAR OR MOTOROLA, WHETHER AS A RESULT OF BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, HAVE ANY LIABILITY TO THE OTHER OR TO ANY THIRD PARTY FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES.

Additional facts are noted below as needed, keeping in mind the standard for summary judgment.

*Discussion*

Motorola argues that the prohibition on "consequential" damages contained in Section 17.1 prohibits ViaStar from recovering lost profits as a form of damages. ViaStar argues that lost profits are "direct" rather than "consequential" damages and are thus not prohibited by the Agreement.

Both parties have cited numerous cases, treatises, and scholarly articles in an attempt to distill supposedly "black letter law" on the issue of whether lost profits are properly labeled "direct" or "consequential" damages. Some of the many cited authorities are lined up below. Simply put, lost profits are sometimes treated properly as direct damages and sometimes as consequential damages. The key to determining which classification is proper in a specific case is the degree to which the breaching party could foresee that the other party's lost profits would be a result of its breach.

Both parties point to language in Indiana state court cases and federal appellate cases stating that lost profits are or are not properly considered consequential damages. For example, the Seventh Circuit has stated: "Consequential economic loss includes all indirect loss, such as lost profits . . . ." *Cooper Power Systems, Inc. v. Union Carbide Chem. & Plastics Co.*, 123 F.3d 675, 681 (7th Cir. 1997). Similarly: "It is those costs and lost profits – 'consequential' or, as they are sometimes called, 'special' damages – that Hyman-Michaels seeks in this lawsuit . . . ." *Evra Corp. v. Swiss Bank Corp.* 673 F.2d 951, 955 (7th Cir. 1982).

The Seventh Circuit has also written, however: "Lost profits are considered to be general or direct damages in a breach of contract case, while they are considered to be special or indirect damages in a tort case." *Moore v. Boating Industry Ass'n*, 754 F.2d 698, 716-17 (7th Cir. 1985), *rev'd on other grounds*, 474 U.S. 895 (1985). The Eighth Circuit relied upon this language in *Moore* when it concluded that the Seventh Circuit had "unequivocally stated" that lost profits are general or direct damages in a breach of contract case. *Computrol, Inc. v. Newtrend, L.P.*, 203 F.3d 1064, 1071 n.5 (8th Cir. 2000). The Eighth Circuit added that "it is incorrect to classify mechanically the prospective lost profits portion of Computrol's damage award as consequential damages." *Id.*

Motorola argues that the Indiana Supreme Court has concluded that lost profits are "consequential" damages. In *Rheem Manufacturing Co. v. Phelps*

*Heating & Air Conditioning, Inc.*, 746 N.E.2d 941 (Ind. 2001), the court ordered summary judgment in favor of a defendant who sought to exclude the plaintiff's claimed lost profits where the contract contained an express provision excluding incidental and consequential damages. ViaStar is correct, however, that the Indiana court did not decide that lost profits are *always* consequential or *always* direct damages. The plaintiff in Rheem Manufacturing did not argue that lost profits should be treated as direct damages. It argued only that a contract provision excluding recovery of consequential damages should not apply when a separate contract provision limiting a buyer's remedies to replacement parts had failed of its essential purpose. The court disagreed with the plaintiff's argument and held that Indiana's version of the Uniform Commercial Code did not categorically invalidate an exclusion of consequential damages when a limited remedy failed of its essential purpose. *Id.* at 947. The Indiana court did not hold that lost profits are always consequential damages.

Although the parties are able to cite numerous other circuit court opinions for support of their respective positions, the citations simply illustrate that lost profits are sometimes treated as consequential damages and sometimes as direct damages. Judge Cardozo noted long ago that the distinction between general damages and consequential or special damages is not absolute:

> At the root of the problem is the distinction between general and special damage as it has been developed in our law. There is need to keep in mind that the distinction is not absolute, but relative. To put it in other words, damage which is general in relation to a contract of one kind may be classified as special in relation to another.

-7-

*Kerr Steamship Co. v. Radio Corp. of America*, 157 N.E. 140, 141 (N.Y. 1927).

Motorola correctly points out that many cases that treat lost profits as direct damages involve a seller rather than a buyer seeking lost profits. This is not, however, universally the case. A different organizing principle must be brought to bear to unify the cases on lost profits. That organizing principle can be found by going back to the canonical case on consequential damages, *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854), a case known to any law student who has completed a first year contracts class. Hadley was forced to shut down his mill when the crankshaft of the mill broke. He contracted with Baxendale to deliver a new crankshaft. When Baxendale failed to deliver the crankshaft on the agreed date, Hadley sued for the profits he lost due to Baxendale's late delivery. The court held that Baxendale could not be held liable for Hadley's lost profits because the losses were not fairly and reasonably contemplated by both parties when they made their contract. The court opined that if the special circumstances of the delivery had been made known to Baxendale, then the lost profits might have been the natural consequence of such a breach and therefore recoverable. *Hadley* does not stand for a rule that lost profits are always consequential damages. It stands for the principle that lost profits are not recoverable when the loss was not a foreseeable consequence of breach:

> Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably . . . be supposed

> to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. . . . [T]he loss of profits here cannot reasonably be considered such a consequence of the breach of contract as could have been fairly and reasonably contemplated by both the parties when they made this contract.

*Hadley*, 9 Exch. at 354-57.

Professors White and Summers noted the continued importance of *Hadley* for interpreting the modern law of consequential damages in their treatise on the Uniform Commercial Code. In discussing what a buyer must prove to recover consequential damages under U.C.C. § 2-715(2), they noted that

> section 2-715(2) is not an exhaustive specification of the necessary and sufficient conditions for application of the concept of consequential damages. . . . As Comment 3 to 1-106 makes clear, the concept of consequential damages is "not defined in terms in the Code" but is used "in the sense given . . . by the leading cases on the subject." The leading case of all [is] *Hadley v. Baxendale*. . . . Because of the brevity and significance of 2-715, it is important to remember that it draws on over a century of common law development, which began with *Hadley v. Baxendale*.

1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 10-4 (4th ed. 1995).

The Seventh Circuit adopted this reading of *Hadley* when it wrote: "Contract law distinguishes between direct and consequential damages, the difference lying in the degree to which the damages are a foreseeable (that is, a highly probable) consequence of a breach." *Rexnord Corp. v. DeWolff Boberg & Associates, Inc.,* 286 F.3d 1001, 1004-05 (7th Cir. 2002) (affirming an award of

lost profits, distinguishing *Hadley,* and holding that lost profits were foreseeable under the circumstances and thus compensable under Indiana law where the defendant could readily foresee the consequences of its breach).

The Eighth Circuit took the same approach in *Computrol, Inc. v. Newtrend, L.P.,* 203 F.3d 1064, 1071 n.5 (8th Cir. 2000): "We are not convinced that the [contract's] restriction on 'special, incidental, or consequential damages,' standing alone, precludes the recovery of lost profits. . . . [I]t is incorrect to classify mechanically . . . prospective lost profits . . . as consequential damages." Other courts have provided a similar analysis. See *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1328-29 (Fed. Cir. 2002) (lost profits that flowed directly from contract were not speculative and therefore were recoverable as direct damages).[2]

Lost profits are often treated as direct damages in cases where a seller, rather than a buyer, is seeking lost profits. This is so not because there is a legal rule that sellers can recover lost profits while buyers cannot, but because a seller's lost profits are particularly foreseeable when a buyer breaches. When a seller breaches, on the other hand, the lost profits of the buyer can seem more speculative and uncertain.

---

[2] "Consequential or incidental damages are those that are speculative or otherwise not foreseen by the parties. Lost profits are not necessarily speculative or consequential per se." *Data Marketing Co. of Virginia v. United States,* 107 Fed. Appx. 187, 197, 2004 WL 1566919, at **10 (Fed. Cir. 2004) (unpublished), citing *Computrol,* 203 F.3d at 1071 n.5.

As *Rexnord* and *Computrol* show, in determining whether lost profits are a foreseeable result of a breach, it is important to look at the language of the contract itself to determine the intention of the parties. "When a sales contract prohibits the buyer from recovering 'consequential damages' but allows the recovery of other forms of damage, the court must draw the distinction [between direct and consequential damages] to honor the intention of the parties." 1 White & Summers, *Uniform Commercial Code*, § 10-4. If the language of the contract indicates that the parties contemplated lost profits as a probable result of breach, then those lost profits are more properly seen as a part of the contract itself, and thus a form of direct damages.

> [W]here loss of profits may reasonably be supposed to have been within the contemplation of the parties when the contract was made, as the probable result of its violation, such profits become a part of the contract itself and the right [to] recover is clear, because it is presumed that the parties considered such element of profits as one of the chief factors in making the contract.

*Haddad v. Western Contracting Co.*, 76 F. Supp. 987, 990 (N.D. W. Va. 1948) (denying new trial and sustaining jury verdict awarding lost profits).

The question here would be more difficult if it were not for section 17.4 of the Agreement. That section provides: "In no event shall a party's liability to the other exceed the value of:  ViaStar's development costs plus (ii) Products purchased by ViaStar plus (iii) pending Release Orders plus (iv) the parties' most current sales forecast determined in accordance with Section 3.5." Section 3.5 provides: "The parties, in good faith and in a commercially reasonable fashion,

will mutually agree upon appropriate forecast procedures and sales forecasts, which shall be updated at least quarterly. All forecasts are for planning purposes only and are non-binding, except as such sales forecasts apply to Section 17." The inclusion of agreed sales forecasts as an element of the agreed cap on damages is a strong indication that the parties intended to treat each party's lost profits as part of the direct damages recoverable for the other party's breach.

Motorola argues that section 17.4 simply provides a method of calculating the maximum allowable damages in the event of a breach by either party, and that the reference to agreed sales forecasts does not indicate that the parties anticipated that lost profits would be one such type of damage. This argument treats the current sales forecasts in the damage cap as an arbitrary factor for arriving at an arbitrary number limiting damages. Under Motorola's interpretation, section 17.4(iv) could just as easily have been replaced by another arbitrary or random number. The more natural interpretation is that section 17.4(iv) indicates that the parties anticipated that lost profits, as measured by the current sales forecasts agreed upon by both parties, would be one type of actual damage that would result from a breach of contract.

In fact, the combination of section 3.5 sales forecasts and their use in the cap on damages in section 17.4 reflects an interesting technique for solving a problem that arises often in commercial contract litigation. It is easy for a plaintiff to claim damages for lost profits at inflated levels. And it is easy for a defendant

to attack even reasonable claims as unduly speculative, especially when the product is new. Here the contract requires the parties to agree with one another on what they believe are reasonable sales forecasts, and to do so for the purpose of determining a cap on damages before they know who might be claiming breach. That agreement should reduce the risk of claims based on wildly inflated sales estimates and the risk that legitimate claims will be rejected as unduly speculative.

In any event, the parties' incorporation of the agreed sales forecasts into their agreed cap on damages is a clear expression of intent that lost profits on those sales would be a reasonably foreseeable consequence of at least some breaches of the Agreement. The Agreement's prohibition on "consequential" damages thus does not prohibit a damage award based on lost profits. Accordingly, Motorola's motion for partial summary judgment on the issue of damages (Docket No. 118) is denied.

So ordered.

Date: October 26, 2006

*David F. Hamilton*
_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Darren Andrew Craig
LOCKE REYNOLDS LLP
dcraig@locke.com

Michael Dockterman
WILDMAN HARROLD ALLEN & DIXON LLP
dockterman@wildmanharrold.com

Mark L. Durbin
WILDMAN HARROLD ALLEN & DIXON LLP
durbin@wildmanharrold.com

Michael H. Gottschlich
BARNES & THORNBURG LLP
mgottsch@btlaw.com

Velisha L. Haddox
WILDMAN HARROLD ALLEN & DIXON LLP
vhaddox@wildmanharrold.com

Gabriel Adam Hawkins
PRICE WAICUKAUSKI & RILEY
ghawkins@price-law.com

Howard E. Kochell
BARNES & THORNBURG LLP
hkochell@btlaw.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Larry A. Mackey
BARNES & THORNBURG LLP
larry.mackey@btlaw.com

Patricia Polis McCrory
LOCKE REYNOLDS LLP
pmccrory@locke.com

Eric S. Pavlack
COHEN & MALAD LLP
epavlack@cohenandmalad.com

Henry J. Price
PRICE WAICUKAUSKI & RILEY
hprice@price-law.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com

Martin Dockery Snyder
WILDMAN HARROLD ALLEN & DIXON LLP
snyderm@wildmanharrold.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com